IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN FRANCISCO AGUIRRE-VELASQUEZ<br><br>    Defendant. | CASE NO. 3:14-cr-00400-JO<br><br>OPINION AND ORDER |

JONES, Judge:

Indicted on one count of Illegal Reentry, a violation of 8 U.S.C. § 1326, Juan Francisco Aguirre-Velasquez ("defendant"), filed a Motion to Dismiss the Indictment (#15) on the basis that his previous removal proceeding violated his due process rights. Upon careful review of the record, I conclude defendant's previous removal proceeding did not violate his due process rights. For the reasons set forth below, defendant's motion is DENIED.

Background

Defendant was born in San Miguel, El Salvador on April 12, 1979. To say his childhood was difficult understates his reality. Due to violence in the region, his family abandoned their home, leaving defendant behind with relatives. Conscripted into the military as a child, he fought for a year, deserted after being tortured, joined the resistance fighters, was recaptured by the military and finally escaped to Guatemala. Between 1988 and 1997, he moved back and forth from El Salvador to Guatemala and Mexico looking for work. In 1997, while working in

1 Opinion and Order

El Salvador, he received a death threat and fled. He crossed the border into the United States in June, 1997.

In January 1999 defendant was arrested on drug charges. He pleaded no contest to two counts of Delivery of a Controlled Substance and received a sentence of 36 months' probation. Deportation procedures began soon thereafter. At the removal hearing before the Immigration Court on October 27, 1999, defendant offered his "Application for Asylum and for Withholding of Removal" (#17-1), supported by a handwritten statement which outlined his history in El Salvador and fears of future reprisals. Immigration Judge ("IJ") Michael Bennett advised defendant of his right to an attorney, his probable ineligibility for asylum due to his drug convictions, and his possible eligibility for withholding of removal. IJ Bennett asked defendant if he wished to submit his application for withholding of removal, to which defendant answered in the affirmative. IJ Bennett set a hearing on the merits of the application for November 17, 1999.

At the hearing on the merits, IJ Bennett made findings in accordance with 8 U.S.C. § 1228. First, IJ Bennett informed defendant that he was ineligible for asylum:

> The immigration service has submitted records which appear to be in your name and they relate to you over the sale of, the sale of heroin or cocaine on at least two different occasions. There were many other counts dismissed. If that is found to be correct . . . all you're asking for is the right to stay her [sic] detained . . . . [W]ith those convictions, you're not eligible for any release under immigration law [e]ven if you were to prevail in your case. Then the court would have to determine whether the sale of those drugs is particularly serious and in most cases it has been found to be so. So then you would only be asking for the right to be detained as long as you wanted to stay here.

(# 17-2, p.5).

2  Opinion and Order

After a lengthy discussion about defendant's drug convictions, IJ Bennett determined the convictions were for "particularly serious crimes." *Id.* at 7. Next, IJ Bennett informed defendant:

> So now, without a doubt your case is . . . about . . . witholding of removal. Your case is only about requesting to stay locked up in the United States instead of being returned to El Salvador. And there is no provision to let you out . . . . And that is called deferred removal . . . meaning that if I find in your favor and things change, then you'd be sent back to El Salvador anyway. But you'd be locked up here for your own protection until that time.

*Id.* at 8. IJ Bennett then asked defendant, "Do you want to pursue a case for the opportunity to stay here locked up indefinitely?" At this point, defendant withdrew his request for withholding of removal and acquiesced in his removal. On January 14, 2000, defendant was removed to El Salvador.

On August 10, 2014, Immigration and Customs Enforcement ("ICE") discovered defendant back in the United States without obtaining permission to do so legally. He was indicted on one count of violating 8 U.S.C. § 1326 (Illegal Reentry). He made his initial appearance in United States District Court on November 7, 2014, entered a Not Guilty plea and was released on pretrial supervision. Defendant filed this Motion to Dismiss Indictment (#15) claiming the removal proceedings underlying the pending Illegal Reentry charge violated his right to Due Process.

## Discussion

A.  Legal Standard

An alien who "has been denied admission, excluded, deported or removed" commits the crime of Illegal Reentry if the alien "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). An alien defendant prosecuted for illegal reentry may not

collaterally attack the underlying deportation unless the alien demonstrates that (1) the alien "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014). An alien in removal proceedings has a due process right to be informed of "his or her ability to apply for relief from removal." *United States v. Ubaldo-Fogueroa*. 364 F.3d 1042, 1050 (9th Cir. 2004). An IJ must inform an alien of apparent eligibility for relief and failure to do so is a denial of due process that invalidates the underlying deportation proceeding. *United States v. Muro–Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001). However, an alien's due process rights are not violated if an IJ informs him, based on controlling law at the time of the removal hearing, that he is ineligible for relief, even if post-removal changes in the law alter that analysis. *United States v. Lopez-Velasquez,* 629 F.3d 894 (9th Cir. 2010).

B.  Analysis

Defendant contends his initial removal proceeding in 1999 violated his right to due process because IJ Bennett erroneously informed defendant that he would be indefinitely detained should he prevail on his request for withholding of removal. Defendant claims this was an incorrect statement of the law.

In 1999, an alien subject to deportation could apply for (1) asylum or (2) withholding of removal under the Immigration and Nationality Act ("INA") or the U.N. Convention Against Torture ("CAT"). 8 C.F.R. § 208.3 (1999). Then, as now, aggravated felons were ineligible for asylum, 8 C.F.R § 208.13(c)(2)(D) (1999), and drug trafficking crimes were considered aggravated felonies. 8 U.S.C. § 1101(a)(43)(B) (1999). Aliens were eligible for withholding of

removal if the Attorney General decided the alien's "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (1999). However, if an alien was convicted of a "particularly serious crime," that alien was "considered to constitute a danger to the community." 8 U.S.C. § 1231(b)(3)(B)(ii) (1999).[1] If so found, the alien was <u>mandatorily denied</u> withholding of removal under either section 241(b)(3) of the INA or the CAT. 8 C.F.R. § 208.16(c)(2) (1999). If an alien received a mandatory denial when applying for withholding of removal, he or she still could have received, under the CAT alone, a "Deferral of Removal." 8 C.F.R. § 208.17(a) (2000)(effective date of the regulation Feb. 19,1999). However, deferral of removal <u>detained an alien indefinitely</u> in the United States until it no longer seemed more likely than not that the alien would be tortured if sent back or the alien terminated the deferral. 8 C.F.R. § 208.17 (2000)(effective date of regulation Feb. 19,1999). The regulation provided in pertinent part that deferral of removal "will not necessarily result in the alien being released from custody of the Service if the alien is subject to such custody." 8 C.F.R. § 1208.17(b)(ii) (2000) (effective date of regulation Feb. 19,1999).

At defendant's removal hearing, IJ Bennett determined that defendant's two 1999 convictions of Delivery of a Controlled Substance were aggravated felonies under 8 U.S.C. §1101(a)(43)(b), making him ineligible for asylum. (# 17-2, p. 5). IJ Bennett then turned to whether defendant was eligible for withholding of removal. IJ Bennett deemed defendant's

---

[1] The rule states: "For purposes of clause (ii), an alien who has been convicted of an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, <u>notwithstanding the length of sentence imposed</u>, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(emphasis supplied). Thus, defendant's sentence of 36 months' probation did not preclude IJ Bennett from determining defendant's drug convictions to be particularly serious crimes.

5  Opinion and Order

convictions "particularly serious," making him ineligible for withholding of removal. (# 17-2, p. 7). Lastly, IJ Bennett assessed defendant's options regarding deferral of removal. He correctly informed defendant that "now, without a doubt your case is not about even getting out . . . . Your case is only about requesting to stay locked up in the United States instead of being returned to El Salvador. And there is no provision to let you out . . . . And that's called deferred removal." (# 17-2, p. 8). IJ Bennett continued, "if I find in your favor and things change, then you'd be sent back to El Salvador anyway. But you'd be locked up here for your own protection until that time." (#17-2, p. 8). Following IJ Bennett's correct identification of defendant's options, including being detained indefinitely pursuant to a deferral of removal, defendant withdrew his application for asylum and withholding of removal. Following the hearing, defendant was properly removed from the United States.

Defendant contends his initial removal proceeding violated his right to due process because IJ Bennett erroneously informed him that he would be indefinitely detained should he prevail on his request for withholding of removal. Defendant, citing *Ma v. Reno*, 208 F.3d 815 (9th Cir. 2000) and *Zadvydas v. Davis*, 533 U.S. 678 (2001), argues this was an incorrect statement of the law because immigration statutes do not permit unlimited indefinite detention. Defendant acknowledges that the opinions in both *Ma* and *Zadvydas* were handed down <u>after</u> IJ Bennett informed defendant of his options for deferred removal, but asserts the precedent is retroactive under the principles announced in *United States v. Aguilera-Rios*, 769 F.3d 626, 631-33 (9th Cir. 2014). Had IJ Bennett instructed the defendant <u>after</u> 2000 that his options were indefinite detention or withdrawing his application for withholding of removal, the instruction would have been erroneous and defendant could collaterally attack this charge for illegal reentry.

However, that is not our case and *Aguilera-Rios* does not provide the retroactive relief defendant seeks.

In cases regarding an IJ's duty to inform an alien as to the alien's eligibility for relief from removal, an IJ must provide accurate information under the applicable law at the time of the deportation hearing. *Lopez-Velasquez*, 629 F.3d at 897. Furthermore, an IJ need not anticipate future changes in law when determining an alien's apparent eligibility for relief from removal. *Lopez-Velasquez*, 629 F.3d at 901. IJs are not expected to be clairvoyant when discharging their duty to inform. *Lopez-Velasquez*, 629 F.3d at 900. Only in narrow circumstances have subsequent precedents been applied in deportation cases. Those cases concern NOT the duty to inform the alien of his eligibility for relief in a removal proceeding, but whether the alien was removable at all. *United States v. Aguilera-Rios*, 769 F. 3d 626, 631 (9th Cir. 2014).

*Aguilera-Rios* illustrates the limited exception to the rule that subsequent statutory interpretation will not be applied retroactively to invalidate a prior removal order. Aguilera-Rios, a lawful permanent resident, was convicted in 2005 of unlawful firearms possession in violation of California Penal Code. Based on the firearms violation, Aguilera-Rios was deported. Six years later, he was convicted of attempted entry after deportation in violation of 8 U.S.C. § 1326(d). Aguilera-Rios collaterally attacked the validity of the 2005 deportation order on the grounds that the federal definition of a firearm specifically exempted antique firearms, while the California definition of a firearm did not. Thus, a person could be convicted under the California Penal code for conduct that did not fall within the federal firearms ground of removal. After Aguilera-Rios's 2005 deportation, the Supreme Court issued its decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678, 185 L. Ed. 2d 727 (2013), concerning application of the categorical

approach in immigration cases. Pursuant to *Moncrieffe*, any conviction under a state firearms statute lacking an exception for antique firearms was not a categorical match for the federal firearms ground of removal. The court invalidated the 2005 removal order and, lacking a predicate element for illegal reentry, reversed Aguilera Rios's conviction for attempted entry after deportation. *Aguilera-Rios*, 769 F.3d at 637.

For defendant here to come within the narrow exception set out in *Aguilera-Rios* regarding the retroactive application of statutory interpretation, he would need to show that a statutory interpretation, subsequent to his 1999 deportation, effectively precluded Delivery of a Controlled Substance as a basis for a removal order. In other words, he would need to show that, had the new statutory interpretation set out in *Ma* and *Zadvydas* been applied in 1999, he would not have been removable at all. He has not done so. In this case, the new statutory interpretation defendant seeks to apply retroactively deals with the substance of the information the IJ delivered to defendant, namely the duration of time an alien could be detained pursuant to deferral of removal. This new statutory interpretation does nothing to invalidate the basis for defendant's removal, the drug offenses, and should not be applied retroactively. Because IJ Bennett fully and accurately informed defendant of his eligibility for relief from removal <u>at the time of the hearing</u>, defendant was not denied his right to due process.[2]

---

[2] Defendant cites *Van Eeton v. Beebe*, 49 F. Supp 2d 1186 (D. Or. 1999) for the proposition that the precedent in Oregon in 1999 was that mandatory detention in immigration proceedings violated due process. Judge Panner's ruling, while informative, did not set precedent in Oregon. See, *Hart v. Massanari*, 266 F.3d 1155, 1163 (9th Cir. 2001) (no trial court decisions are binding precedent.) Even as late at 2001, federal courts were undecided as to whether mandatory detention violated due process. "Federal courts are split over this issue. Several district courts ... have determined the mandatory detention without bond violates an alien's right to due process of law and is unconstitutional. *See Radoncic v. Zemski*, 121 F.Supp.2d 814 (E.D.Pa.2000); *Juarez-Vasquez v. Holmes*, No. 00-CV-4727, 2000 U.S. Dist. LEXIS 16417 (E.D.Pa. Nov. 3, 2000); *Koita v. Reno*, 113 F.Supp.2d 737 (M.D.Pa.2000); *Son Vo v. Greene*, 109 F.Supp.2d 1281 (D.Colo.2000); *Welch v. Reno*, 101 F.Supp.2d 347 (D.Md.2000); *Chukwuezi v. Reno*, No. 3: CV-

8 Opinion and Order

Conclusion

At the time of defendant's 1999 hearing on removal, IJ Bennett correctly informed defendant of his eligibility for relief from removal, including the fact that he would be indefinitely detained. The changes in the interpretation of the immigration statutes that no longer allow for indefinite detention in deferral of removal cases, as enunciated in *Ma* and *Zadvydas*, cannot be applied retroactively. Defendant's due process rights were not violated and defendant's prior removal order was valid. Defendant's Motion to Dismiss the Indictment (#15) is DENIED.

IT IS SO ORDERED.

DATED this 6th day of October, 2015.

Robert E. Jones
Senior District Court Judge

---

99-2020, 2000 U.S. Dist. LEXIS 15432 (M. D.Pa. May 16, 2000); *Bouayad v. Holmes*, 74 F.Supp.2d 471 (E.D.Pa.1999); *Rogowski v. Reno*, 94 F.Supp.2d 177 (D.Conn.1999); *Nhoc Danh v. Demore*, 59 F.Supp.2d 994 (N.D.Cal.1999); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186 (D.Ore.1999). Several other courts, including the seventh and eleventh circuits, have held otherwise. *See e.g., Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999); *Richardson v. Reno*, 162 F.3d 1338, 1363 n. 119 (11th Cir.1998); *Avramenkov v. INS*, 99 F.Supp.2d 210 (D.Conn.2000); *Okeke v. Pasquarell*, 80 F.Supp.2d 635 (W.D.Tex.2000); *Reyes v. Underdown*, 73 F.Supp.2d 653 (W.D.La.1999); *Diaz-Zaldierna v. Fasano*, 43 F.Supp.2d 1114 (S.D.Cal.1999)." *Patel v. Zemski*, No. CIV.A.01-405, 2001 WL 503431, at *2 (E.D. Pa. Dec. 19, 2001).

9  Opinion and Order