IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JUAN FRANCISCO AGUIRRE-VELASQUEZ ) <br> ) <br> ) <br> Defendant. ) | CASE NO. 3:14-cr-00400-JO <br><br> OPINION AND ORDER |

JONES, Judge:

Juan Francisco Aguirre-Velasquez ("defendant") filed a Motion for Reconsideration (#25) on the basis that a previous deportation proceeding violated his due process rights. For the reasons set forth below, defendant's motion is DENIED.

### Prior Proceedings

On November 17, 1999, defendant appeared at a removal hearing before the Immigration Court. Immigration Judge ("IJ") Michael Bennett found that defendant's prior convictions for Delivery of a Controlled Substance constituted "particularly serious crimes." (#17-2 at 7). The IJ advised defendant that he could either pursue a case to be locked up indefinitely or return to El Salvador. (#17-2 at 8). Based on that advice, defendant withdrew his application. Defendant elected to return to El Salvador, and he was removed on January 14, 2000.

On August 10, 2014, Immigration and Customs Enforcement ("ICE") found defendant back in the United States. Defendant was indicted on one count of violating 8 U.S.C. § 1326

1 Opinion and Order

(Illegal Reentry). After making his initial appearance in the United States District Court and entering a Not Guilty plea, defendant filed a Motion to Dismiss Indictment (#15), which I denied (#22). Defendant then filed this Motion for Reconsideration (#25).

## Legal Standard

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). While a court is permitted to reconsider a prior order, reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003) (citation and internal quotation marks omitted). A motion for reconsideration may not be used to present arguments that were or could have been raised in the initial motion. *Id.*

## Discussion

In his motion for reconsideration, defendant reiterates his argument that the underlying deportation proceeding violated his due process rights. An alien who "has been denied admission, excluded, deported or removed" commits the crime of Illegal Reentry if the alien "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). An alien defendant prosecuted for illegal reentry may not collaterally attack the underlying deportation unless the alien demonstrates that (1) the alien "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014). An underlying order is

"fundamentally unfair" if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1047 (9th Cir. 2004).

This case turns on whether defendant can demonstrate that the underlying order was fundamentally unfair. Defendant argues that his due process rights were violated when the IJ informed him he would be detained indefinitely if he received deferral of removal. Specifically, defendant argues that (1) the Supreme Court's holding in *Zadvydas* should apply retroactively; and (2) even without retroactive application of *Zadvydas*, the IJ inaccurately stated the law at the time of defendant's underlying deportation proceeding. I conclude that *Zadvydas* should not apply retroactively, and, even assuming arguendo a due process violation occurred, no prejudice resulted from any alleged defect in the proceeding.

## I. Retroactive Application of *Zadvydas*

Pursuant to 8 U.S.C.A. § 1231(a)(6), inadmissible or criminal aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . ." In 2001, the Supreme Court in *Zadvydas* construed this statute to include a presumptive reasonable time limitation for detention of six months. The Court concluded that "once removal is no longer foreseeable, continued detention is no longer authorized by statute" because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690, 699 (2001).

Defendant asserts that the Court's interpretation of 8 U.S.C.A. § 1231 (a)(6) in *Zadvydas* applies retroactively to his 1999 removal. However, the Ninth Circuit expressly held that a noncitizen's due process rights are not violated if an IJ informs him about his eligibility for relief based on controlling law *at the time of the removal hearing. United States v. Vidal-Mendoza,*

705 F.3d 1012 (9th Cir. 2013) (emphasis supplied). A "removal is to be judged under applicable law at the time of the removal hearing . . . not post-removal precedent." *United States v. Aguilera-Rios*, 769 F.3d 626, 631 (9th Cir. 2014) (internal quotation marks and citations omitted). The only exception to this rule is in cases where an IJ's finding of removability is rendered invalid by subsequent precedent. *Vidal-Mendoza*, 705 F.3d at 1018; *Aguilera-Rios*, 769 F.3d at 633. Here, the IJ's finding of removability based on defendant's drug convictions was legally valid in 1999 and remains so today. Accordingly, the Court's decision in *Zadvydas* cannot have retroactive effect.

## II. Law at the Time of Defendant's Underlying Deportation Hearing

Defendant also argues that, even without retroactive application of *Zadvydas*, the IJ incorrectly stated the law at the time of defendant's underlying deportation hearing. At the deportation hearing, the IJ informed defendant that, if he received deferral of removal, he would be locked up "potentially forever" in the United States, unless and until he was removed to El Salvador. The IJ then stated that his case "is only about requesting to stay locked up in the United States instead of being returned to El Salvador" and "there is no provision to let [defendant] out." (#17-2 at 7-8).

Defendant claims that the IJ's statement that defendant would be locked up "potentially forever" was an inaccurate statement of the law at the time of the hearing. However, in 1999, 8 U.S.C.A. § 1231 permitted the continued detention of inadmissible or criminal noncitizens beyond the removal period. While some federal district courts had held that indefinite detention, though permitted under statute, violated due process, those decisions were not binding. *See, e.x., Hermanowski v. Farguharson*, 39 F.Supp. 2d. 148 (D. R.I. 1999); *Phan v. Reno*, 56 F.Supp. 2d 1149 (W.D. Wash. 1999); *Vo v. Greene*, 63 F.Supp. 2d 1278 (D. Co. 1999). Moreover, other

district courts and one federal appellate court had held otherwise. *See, e.x., Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir. 1999); *Villafuerte v. INS.*, 71 F.Supp. 2d 573 (W.D. La. 1999). Significantly, no binding precedent existed at the time of defendant's removal hearing that either found 8 U.S.C.A. § 1231(a)(6) to be unconstitutional or construed it to contain a presumptive time limit. Thus, the IJ accurately stated the applicable law at the time of the removal hearing when he claimed that defendant could be detained indefinitely if he received deferral of removal.

Defendant correctly asserts that deferral of removal did not *mandate* indefinite detention. 8 U.S.C.A. § 1231(a)(6) allowed for continued detention of inadmissible or criminal noncitizens beyond the removal period, but it also permitted the release of noncitizens under certain terms of supervision. Additionally, a few months before defendant's deportation proceeding, the INS implemented regulations establishing periodic review of cases where noncitizens were detained beyond the 90-day detention period. *See Ma v. Reno*, 208 F.3d 815, 819 n.5, 820 n.8 (9th Cir. 2000); *See, also,* United States Department of Justice, Immigration and Naturalization Service, Memorandum from Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations, *Interim Changes and Instructions for Conduct of Post-Order Custody Reviews* (Aug. 6, 1999). Thus, the only possible means by which defendant could claim that his due process rights were violated is by claiming that the IJ failed to inform him that his continued detention would be subject to periodic review.

I need not decide however, whether this omission constituted a due process violation, because defendant cannot demonstrate that he suffered any prejudice. "An alien suffers prejudice from a due process violation in deportation proceedings if the violation potentially affects the outcome of the proceedings." *Perez-Lastor v. I.N.S.*, 208 F.3d 773 (9th Cir. 2000).

Defendant bears the initial burden of demonstrating prejudice. *United States v. Cerda-Pena*, 799 F.2d 1374 (9th Cir. 1986).

Here, defendant has not produced any evidence to demonstrate that the IJ's failure to inform him that his continued detention would be reviewed periodically potentially affected the outcome of the proceedings. When the IJ asked defendant if he wanted to pursue a case for deferral of removal, defendant stated that he wanted to return to his country because he was "not happy at any place." (#17-2 at 8). The IJ then asked defendant if he would like to go to another country. Initially, defendant responded in the affirmative. The IJ informed defendant that most likely another country would not take him, and defendant expressed his understanding. The IJ then told defendant that it would take "several months" to determine whether he could be removed to another country. At that point, defendant elected to return to his home country, El Salvador, explaining that it had been "a long time [he'd] been in jail now." (#17-2 at 9).

In sum, defendant was unwilling to remain in detention for several months to see whether he could be transferred to another country. If defendant was unwilling to remain in detention a few months to potentially secure his safety, then defendant cannot demonstrate that he would have been willing to remain in detention "indefinitely" under deferral of removal, even if he knew that his continued detention would be subject to periodic review.[1] In addition, under deferral of removal, defendant still would have been deported once an IJ determined he would no longer more likely than not be tortured if he returned to El Salvador. Thus, even assuming defendant has a viable due process claim, defendant has not demonstrated prejudice, because he

---

[1] As described earlier in this opinion, while the Court in *Zadvydas* found indefinite detention to present constitutional concerns, indefinite detention was an accurate statement of the law at the time of defendant's underlying deportation hearing and it therefore presents no due process violation. Moreover, even under the rule of law articulated in *Zadvydas*, defendant could expect to be detained for at least six months, until he was released on supervision or returned to his home country.

6 Opinion and Order

has not shown that the outcome would have been different without the alleged violation. Accordingly, I deny defendant's Motion for Reconsideration.

## Conclusion

The IJ's affirmative statements regarding indefinite detention did not violate defendant's due process rights, because they accurately reflected the law at the time of defendant's removal hearing. Moreover, even assuming there was a defect in the underlying deportation proceeding, defendant did not suffer any prejudice as a result. Accordingly, defendant has not demonstrated in his motion for reconsideration that the court committed clear error or that the initial decision was manifestly unjust. Defendant's Motion for Reconsideration (#25) is DENIED.

IT IS SO ORDERED.

DATED this 14 day of December, 2015.

Robert E. Jones
Senior District Court Judge